UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VESAL YAGHOOBI,

         *Plaintiff*,

v.

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES, OFFICE OF THE
INSPECTOR GENERAL,

         *Defendant*.

Civil Action No. 24-1255 (RDM)

**MEMORANDUM OPINION AND ORDER**

      Plaintiff Vesal Yaghoobi, proceeding *pro se*, brings this action against the U.S. Department of Health and Human Services, Office of the Inspector General ("OIG") seeking to compel the OIG "to reopen and properly investigate Plaintiff's [w]histleblower [r]etaliation [c]omplaints." Dkt. 15-1 at 6 (Am. Compl.). Plaintiff asserts three claims under two different statutes: the 2013 National Defense Authorization Act ("NDAA"), 41 U.S.C. § 4712, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1). First, she alleges that the OIG violated the NDAA by failing to investigate her whistleblower retaliation complaint and by incorrectly treating the complaint as duplicative of her separate Equal Employment Opportunity Commission ("EEOC") discrimination complaint. Dkt. 15-1 at 5 (Am. Compl. ¶¶ 17–20); *id.* at 3 (Am. Compl. ¶ 10). Second, she alleges that the OIG violated the APA by closing the investigation into her whistleblower retaliation complaint "without any rational basis." *Id.* at 5 (Am. Compl. ¶¶ 21–23). Finally, she alleges the OIG violated the NDAA by failing to consider the evidence that her former employer, Tufts Medical Center, retaliated against her for engaging in activity protected by the NDAA. *Id.* at 6 (Am. Compl. ¶¶ 24–26).

The OIG moves to dismiss for lack of subject-matter jurisdiction. Dkt. 18-1. In less than two-pages of analysis, the OIG makes only one argument and leaves a host of other jurisdictional (and nonjurisdictional) arguments unaddressed. The one argument that it does raise, moreover, is unpersuasive. It argues that the OIG's decision whether "to prosecute or [to] enforce" the NDAA is "committed to its absolute discretion" and that, as a result, the Court lacks jurisdiction to review that decision. Dkt. 18-1 at 5. But unlike the statute at issue in *Heckler v. Chaney*, 470 U.S. 821 (1985), the principal case upon which the OIG relies, the NDAA does not merely confer enforcement *authority* on federal agencies, it *requires* inspectors general to investigate retaliation complaints, except under specific, statutorily defined circumstances. Here, the OIG concluded that one of those exceptions applied because Plaintiff's complaint had "previously been addressed in another . . . administrative proceeding." 41 U.S.C. § 4712(b)(1). Plaintiff's complaint, in turn, does not challenge the exercise of any enforcement discretion; instead, she alleges that the OIG incorrectly invoked this exception to the NDAA's mandate. According to Plaintiff, her OIG complaint dealt with whistleblower retaliation, while her prior administrative complaint dealt with disability discrimination. Or put in APA parlance, the OIG's determination that her whistleblower complaint was the subject of a prior administrative proceeding was arbitrary and capricious. The OIG's motion ignores the significant differences between *Heckler v. Chaney* and this case.

This is not to say that the Court is convinced that it has jurisdiction over this matter. The Court concludes only that the narrow argument raised in the OIG's motion is wrong. Before proceeding further with the case, the Court will still need to determine, for example, whether the agency head, unlike the inspector general, has discretion to issue an enforcement order and, if so, what bearing, if any, that has on Plaintiff's Article III standing or on the Court's statutory

jurisdiction. The Court must also consider whether Plaintiff has brought an enforcement action against her employer and, if so, whether and how that action might affect the Court's jurisdiction here. Although the Court must, of course, resolve these questions before proceeding to the merits, that does not mean that the Court should do so without the benefit of any briefing from the parties. The Court will therefore **DENY** the OIG's motion without prejudice and will schedule a status conference to address how best to address these, and any other, threshold issues raised by Plaintiff's complaint.

## I. BACKGROUND

### A. Statutory Background

The NDAA provides protection to employees of federal contractors who report gross mismanagement of federal funds. In particular, it prohibits federal contractors from "discharg[ing], demot[ing], or otherwise discriminat[ing] against" an employee "as a reprisal for disclosing . . . information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant." 41 U.S.C. § 4712(a)(1).

It also provides a mechanism by which whistleblowers can report suspected retaliation. If a whistleblower believes that she "has been subjected to a reprisal" prohibited by the NDAA, she "may submit a complaint to the Inspector General of the executive agency involved"—here, HHS. *Id.* § 4712(b)(1). The NDAA provides that the Inspector General "shall investigate" the complaint "[u]nless the Inspector General determines that the complaint is frivolous, fails to allege a violation of the [NDAA], or has previously been addressed in another Federal or State judicial or administrative proceeding initiated by the complainant." *Id.* After the investigation is

completed, the Inspector General "shall submit a report of the findings of the investigation" to the whistleblower, the contractor, and the head of the agency, who is tasked with determining the appropriate action.  *Id.*

**B.     Factual Background**

For purposes of evaluating the OIG's motion to dismiss, the following facts, taken from Plaintiff's complaint, are accepted as true.  *See Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 67 (D.C. Cir. 2015).

Plaintiff was a medical resident at Tufts Medical Center.  In the summer of 2023, she began to suspect that Tufts Medical Center was engaged in "fraud involving government insurance programs."  Dkt. 15-1 at 2 (Am. Compl. ¶ 7).  She raised her concerns with her supervisors, but those concerns were dismissed.  *Id.* at 3 (Am. Compl. ¶ 8).  Plaintiff then "disclos[ed]" those concerns "to government agencies on August 3 and August 4, 2023," after which she allegedly "faced retaliation."  *Id*.  In response, she filed twelve complaints with the OIG between September and November 2023.  *Id.* (Am. Compl. ¶ 9).  Five of those complaints alleged healthcare fraud, six alleged whistleblower retaliation, and one alleged medical identity theft.  *Id.*  At issue in this case are the whistleblower retaliation claims.

The OIG initiated a review of Plaintiff's complaints on November 9, 2023.  *Id.* at 4 (Am. Compl. ¶ 13).  During that process, Plaintiff communicated with OIG employees multiple times regarding her case.  In one of those communications, Plaintiff attached a complaint that she had filed with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and related retaliation.  *See* Dkt. 20-1 at 25–31.  Specifically, Plaintiff's EEOC complaint alleged that her employer, Tufts Medical Center, had labeled her as "a person with a mental disability after [she] reported patient safety concerns to authorities and [her] program director[,]" and, based on this disability, Tufts Medical Center had suspended her until she

4

agreed to complete a medical exam. *Id.* at 26. Soon after Plaintiff forwarded her EEOC complaint to the OIG, the OIG closed its investigation of Plaintiff's whistleblower complaints. Dkt. 20-1 at 25–31. The agency explained that decision by marking the box for "Complaint Filed in Another Forum (e.g. EEO, Federal/State Court, etc.)." Dkt. 20-2 at 1.

After the OIG closed the investigation, Plaintiff contacted the OIG to provide new evidence to support her original complaints, but the OIG declined to reopen the investigation. *Id.* (Am. Compl. ¶ 14). Later, Plaintiff filed additional complaints detailing additional retaliatory actions allegedly taken by her employer, but the OIG declined to investigate her claims any further. *Id.* (Am. Compl. ¶ 15).

Plaintiff initiated this lawsuit on April 29, 2024, Dkt. 1, and amended complaint on August 28, 2024, Dkt. 15-1.[1] Count I alleges that the OIG failed to fulfill its statutory obligation under the NDAA to investigate Plaintiff's complaints of retaliation. *Id.* at 5 (Am. Compl. ¶¶ 17–20). Count II alleges that by closing its initial investigation, the OIG violated the APA's prohibition against arbitrary and capricious agency action. *Id.* (Am. Compl. ¶¶ 21–23). Finally, Count III alleges that the OIG violated the NDAA by refusing to consider all of the evidence Plaintiff had presented. *Id.* at 6 (Am. Compl. ¶¶ 24–26). As a remedy, Plaintiff requests that the Court order the OIG to reopen and fully to investigate her complaints. *Id.* (Am. Compl.). She also asks that the Court order the OIG to report its findings and to consider the additional evidence of retaliation. *Id.*

Before the Court is the OIG's motion to dismiss for lack of subject-matter jurisdiction, Dkt. 18, which Plaintiff opposes, Dkt. 20.

---

[1] Although Plaintiff labeled the operative complaint her "second amended complaint," it was, as the Court previously noted, "Plaintiff's first attempt to amend." Min. Entry (Aug. 30, 2025).

## II. LEGAL STANDARD

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A motion to dismiss under Rule 12(b)(1) challenges the Court's jurisdiction to hear the claim and may raise a "facial" or "factual" challenge to the Court's jurisdiction. A facial challenge asks whether the plaintiff has pleaded facts sufficient to establish the court's jurisdiction, while a factual challenge asks the court to "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). A facial challenge, in other words, is confined to the four corners of the complaint, while a factual challenge permits the court to look beyond the complaint to satisfy itself that it has jurisdiction to hear the suit. Whether a motion to dismiss is facial or factual, the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject-matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "[I]n passing on a motion to dismiss" for lack of jurisdiction, however, "the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Leatherman v. Tarrant Cty. Narcotics and Coordination Unit*, 507 U.S. 163, 164 (1993); *Phillips v. Bureau of Prisons*, 591 F.2d 966, 968 (D.C. Cir. 1979). Moreover, the pleadings of *pro se* plaintiffs are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### III. ANALYSIS

As an initial matter, the Court notes the limited scope of the OIG's motion to dismiss. It does not address the Court's Article III jurisdiction, nor does it address whether the agency head (as opposed to the OIG) has unreviewable enforcement discretion. Nor does the OIG reach ahead to the merits. Thus, although it gestures at an argument that the NDAA does not include a cause of action against the agency, Dkt. 18-1 at 6, it raises that point only in support of its jurisdictional challenge. Similarly, it says nothing about whether the OIG's determination constitutes final agency action for purposes of the APA. Consistent with the principal that the Court must address jurisdiction before addressing the merits, *see Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998), and given the narrow scope of the OIG's motion and briefing, the Court will limit its analysis to the question whether the OIG's determination that Plaintiff's whistleblower complaints were "[f]iled in [a]nother [f]orum," Dkt. 20-2 at 1, was "committed to its absolute discretion" and is, therefore, "unreviewable," Dkt. 18-1 at 5. For the reasons explained below, the Court is unpersuaded.

The OIG's argument begins and ends with *Heckler v. Chaney*, 470 U.S. 821 (1985). In that case, a group of death-row inmates petitioned to "request[] that the" Food and Drug Administration ("FDA") "take various enforcement actions to prevent" the unapproved use of certain drugs in lethal injections. *Id.* at 823. When the FDA rejected the petition, the inmates brought suit under the APA seeking a court order directing the FDA to take the requested enforcement actions. *Id.* at 825. The inmates lost before the district court and prevailed before the Court of Appeals. The Supreme Court reversed, holding that the district court lacked jurisdiction because the agency's decision not to enforce the relevant provisions of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, was "committed to agency

7

discretion by law," 5 U.S.C. § 701(a)(2), and thus beyond the waiver of sovereign immunity contained in the APA, *id.* § 702.

As the Court explained, "agency decisions to refuse enforcement" are generally, although not always, "unsuitab[le] for judicial review" for several reasons. 470 U.S. at 831. That is because nonenforcement decisions "often involve[] a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise," including "whether agency resources are best spent on this violation or another, whether the agency is likely to succeed," "whether the particular enforcement action requested best fits the agency's overall policies," and "whether the agency has enough resources to undertake the action at all." *Id.* In addition, the decision whether to enforce a statute is akin to "the decision of a prosecutor . . . not to indict," "which has long been regarded as the special province of the Executive Branch." *Id.* at 832. But the Court also stressed that a nonenforcement "decision is only presumptively unreviewable," and "the presumption may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Id.* at 832–33. That is, "Congress may limit an agency's exercise of enforcement power if it wishes, either by setting substantive priorities, or by otherwise circumscribing an agency's power to discriminate among issues or cases it will pursue," and, absent legislative direction to the contrary, courts should enforce limits under the APA. *Id.* at 833.

*Heckler v. Chaney* offers two examples of how these principles apply. First, in considering the provisions of the FDCA at issue in that case, the Court concluded that Congress left the enforcement determination to the agency alone. Among other things, the Court noted that the general enforcement provision at issue, 21 U.S.C. § 372, simply "authorized" the Secretary to act; it did not require or compel agency action. *Id.* at 835. The Court further

concluded, more generally, that "[t]he Act's enforcement provisions . . . commit complete discretion to the Secretary to decide how and when they should be exercised." *Id.* Second, and by way of contrast, the Court pointed to its decision in *Dunlop v. Bachowski*, 421 U.S. 560 (1975), which "involved a suit by a union employee, under the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 481 *et seq*. (LMRDA), asking the Secretary of Labor to investigate and file suit to set aside a union election." 470 U.S. at 833. Unlike the FDCA, that statute spoke in mandatory terms and provided that "[t]he Secretary shall investigate such a complaint and, if he finds probable cause to believe that a violation . . . has occurred . . . he shall . . . bring a civil action." 29 U.S.C. § 482. The *Dunlop* Court held that the Secretary's decision not to file suit was subject to review under the APA and that "the 'principle of absolute prosecutorial discretion' [was] inapplicable, because the language of the LMRDA indicated that the Secretary was required to file suit if certain 'clearly defined' factors were present" and thus "[t]he decision . . . was not 'beyond the judicial capacity to supervise.'" *Heckler*, 470 U.S. at 834 (citations omitted) (cleaned up).

Here, the OIG simply posits, without meaningful analysis, that this case is controlled by *Chaney* and its progeny and that Plaintiff "offers no authority for the proposition that [NDAA] investigations are compelled by any clear right or by any plainly defined and nondiscretionary duty." Dkt. 18-1 at 6. But that argument ignores the plain text of the NDAA, which provides that the Inspector General "shall" investigate a whistleblower complaint and "shall" submit a report of her findings to the complainant, the contractor, and the head of the relevant agency. 41 U.S.C. § 4712(b)(1). The NDAA also specifies when an inspector general may decline to "investigate the complaint" and to "submit a report of the findings of the investigation to the person, the contractor . . . and the head of the agency"—if, and only if, he determines that the

9

complaint (1) "is frivolous," (2) "fails to allege a violation of the prohibition in" the NDAA, or (3) "has previously been addressed in another Federal or State judicial or administrative proceeding initiated by the complainant." *Id*.

Understood in this light, this case is seemingly much closer to *Dunlop* than *Chaney*. The statute mandates that the inspectors general "shall" undertake an investigation in response to a complaint, and the exceptions are both limited and defined. To be sure, the first two exceptions, neither of which is at issue in this case, require the exercise of sound judgment in assessing the merits of a claim. But, if anything, the determination whether a complaint is frivolous or fails to allege a violation of the NDAA involves the exercise of less discretion than the determination at issue in *Dunlop*—that is, "whether there is probable cause to believe that violations of [29 U.S.C. §] 481 have occurred affecting the outcome of the [union] election." *Bachowski v. Brennan*, 502 F.2d 79, 88 (3d Cir. 1974). This case, in any event, involves only the third exception, which turns on the "clearly defined" question whether the complaint "has previously been addressed in another Federal or State judicial or administrative proceeding initiated by the complainant." 41 U.S.C. § 4712(b)(1). That is the type of question that courts resolve day-in and day-out in applying the rules of res judicata and collateral estoppel, and they do not require the exercise of any meaningful discretion. Notably, moreover, Plaintiff's complaint does not question the exercise of agency discretion; rather, she alleges that the OIG simply made an obvious mistake when it concluded that her EEOC complaint, which alleged disability discrimination, raised the same issue posed by her whistleblower retaliation claim. If answering that question would require the Court to tread upon any zone of administrative discretion, the OIG has failed to explain how.

The only (potentially) on-point authority that the OIG invokes is the out-of-district decision in *Sharpe v. United States*, No. 7:23-cv-1673, 2024 WL 3363846 (E.D.N.C. 2024). In that case, the district court held that an agency's dismissal of an NDAA whistleblower complaint on the grounds that it "did not allege a violation of the prohibition against contract whistleblower reprisal" was unreviewable under *Chaney*. *See id.* at *3. The court offered two rationales for that conclusion, neither of which is persuasive. *First*, the Court reasoned that "[t]here is no indication in § 4712(b)(1) or elsewhere in the statute that Congress intended there to be judicial review of the initial determination by the Inspector General." *Id.* To be sure, the NDAA does not include a cause of action against the inspector general; instead, the statute permits suits against the entity that allegedly engaged in the underlying retaliatory conduct. But the same thing could be said of dozens and dozens of other federal statutes that are routinely enforced pursuant to the APA. *Second*, the court concluded that, under *Chaney*, the statute lacked "guidelines for the agency to follow." *Id*. But, as discussed above, the NDAA includes guardrails that are at least as clear as those at issue in *Dunlop*, and, unlike the statute at issue in *Chaney*, the NDAA provides that the inspectors general "shall investigate" and "submit a report of the findings of the investigation" to the complainant, the contractor, and the head of the agency. 41 U.S.C. § 4712(b)(1). The NDAA also sets strict timelines for the inspectors general to act, *id*. § 4712(b)(2)(A), and sets parameters for seeking extensions of those timelines, *id*. § 4712(b)(2)(B). Finally, an inspector general's determination has legal consequence beyond the bounds of any agency enforcement proceeding. *Id.* § 4712(c)(3) (inspector general determinations "shall be admissible in evidence in any de novo action at law or equity brought pursuant to" the NDAA).

11

Far more persuasive for present circumstances is the D.C. Circuit's binding precedent in *Cook v. FDA*, 733 F.3d 1 (D.C. Cir. 2013).  The statue at issue in that case provided (1) that the FDA "shall request" that Customs and Border Protection ("CBP") provide the agency with samples of drugs offered for import and (2) that a drug that (upon examination by the FDA) violates a substantive provision of the FFDCA "shall be refused admission" into the United States "except as provided" in another provision.  *Id.* at 7–8.  As in *Chaney*, the FDA argued that the court lacked jurisdiction because the statute gave the agency "unreviewable enforcement discretion."  *Id.* at 5.  The court, however, was unconvinced.  As it explained, the *Chaney* presumption can be "rebutted by . . . specific 'legislative direction in the statutory scheme,'" and the statutory provision at issue in *Cook* "set[] forth precisely when the agency must determine whether a drug offered for import appears to violate the FDCA, and what the agency must do with such a drug," *id*. at 7, and, unlike the provisions at issue in *Chaney*, the statutory provision at issue used "'shall' in connection with the antecedent condition," *id.*

It is less clear that the NDAA imposes similar limits on the decision made by the head of the agency about whether to issue an order directing that the contractor "abate the reprisal" or take other remedial action, 41 U.S.C. § 4712(c)(1), and whether that question has any bearing on the separate question whether a court has jurisdiction to review an inspector general's decision to close an investigation, *cf. Drake v. FAA*, 291 F.3d 59 (D.C. Cir. 2002).  But the parties have not briefed that question, and the Court will not decide that question of first impression without briefing.  It is also unclear whether Plaintiff has Article III standing.  The parties have not addressed, for example, whether Plaintiff has brought suit against Tufts Medical Center and, if so, where that litigation stands, nor have they addressed whether an order requiring the OIG to reconsider its decision to close its investigation would redress any cognizable injury that Plaintiff

has suffered due to the OIG's decision.  But, again, the Court will not reach those issues without briefing.  For now, the Court will simply deny the OIG's motion to dismiss without prejudice and will require the parties to address these and any other threshold questions.[2]

## CONCLUSION

For the above reasons, it is hereby **ORDERED** that Defendant's motion to dismiss, Dkt. 18, is **DENIED** without prejudice.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  August 1, 2025

---

[2] Although Defendant does not raise the issue, the Court also concludes that Plaintiff's APA claim is not governed by 41 U.S.C. § 4712(c)(5), which states that a person "adversely affected or aggrieved by an order issued under [§ 4712(c)(1)] may obtain review of the order[] . . . in the United States court of appeals for a circuit in which the reprisal is alleged."  Section 4712(c)(1) concerns an order issued by "the head of the executive agency" after "receiving an Inspector General report."  Here, Plaintiff does not challenge an order under § 4712(c)(1).  In fact, on the facts alleged, it seems that the head of HHS never issued a § 4712(c)(1) order because the Inspector General closed the investigation into Plaintiff's complaints without issuing a report.  Thus the provision channeling review of such an order to the Court of Appeals does not apply.