**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

VESAL YAGHOOBI,

*Plaintiff*,

v.

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, OFFICE OF THE INSPECTOR GENERAL,

*Defendant*.

Civil Action No. 24-1255 (RDM)

**MEMORANDUM OPINION**

Plaintiff Vesal Yaghoobi, proceeding *pro se*, brings this action against the U.S. Department of Health and Human Services, Office of the Inspector General ("OIG") challenging OIG's decision to close her whistleblower retaliation complaints and seeking to compel OIG to return materials to her that she submitted to the office in support of her complaint. Dkt. 26 (2d Am. Compl.) "Plaintiff does not seek to compel . . . OIG to reopen or reinvestigate her whistleblower retaliation complaints" but, rather, seeks only "narrow declaratory and mandamus relief to correct the legal record" and an order granting her "access to material that are uniquely within . . . OIG's possession," which she claims are "necessary to protect [her] legal rights" in litigation pending in the U.S. District Court for the District of Massachusetts. *Id.* at 1 (2d Am. Compl. ¶ 2). OIG moves to dismiss Plaintiff's Second Amended Complaint for lack of subject-matter jurisdiction and failure to state a claim and, in the alternative, moves for summary judgment. Dkt. 28.

For the reasons explained below, the Court concludes that it lacks subject-matter jurisdiction and will, accordingly, **DISMISS** Plaintiff's Second Amended Complaint and this action without prejudice.

## I. BACKGROUND

### A. Statutory Background

The 2013 National Defense Authorization Act ("NDAA" or the "Act") provides protection to employees of federal contractors who report gross mismanagement of federal funds. 41 U.S.C. § 4712. As relevant here, the Act prohibits federal contractors from "discharg[ing], demot[ing], or otherwise discriminat[ing] against" an employee "as a reprisal for disclosing . . . information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant." *Id.* § 4712(a)(1).

The Act also provides a mechanism by which whistleblowers can report suspected retaliation. If a whistleblower believes that she "has been subjected to a reprisal" prohibited by the NDAA, she "may submit a complaint to the Inspector General of the executive agency involved"—here, HHS. *Id.* § 4712(b)(1). The NDAA provides that the Inspector General "shall investigate" the complaint "[u]nless the Inspector General determines that the complaint is frivolous, fails to allege a violation of the [NDAA], or has previously been addressed in another Federal or State judicial or administrative proceeding initiated by the complainant." *Id.* After the investigation is completed, the Inspector General "shall . . . submit a report of the findings of

the investigation" to the whistleblower, the contractor, and the head of the agency, who is tasked with determining the appropriate action. *Id.* §§ 4712(b)(1), (c).

### B. Factual Background

For purposes of evaluating OIG's motion to dismiss, the following facts, taken from Plaintiff's Second Amended Complaint, are accepted as true. *See Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 67 (D.C. Cir. 2015). For purposes of OIG's motion for summary judgment, in contrast, the Court relies only on those facts supported by OIG's motion and uncontroverted by Plaintiff's response. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(a).

Plaintiff is a former employee of Tufts Medical Center. Dkt. 26 at 3, 7 (2d Am. Compl. ¶¶ 9, 38). On August 4, 2023, she "made disclosures to government authorities, including . . . OIG, concerning conduct" that she believed "constituted misconduct involving federal programs and patient safety." *Id.* at 3 (2d Am. Compl. ¶ 11). She subsequently "discovered a patient document that" she "believed constituted evidence of patient identity theft involving a Medicare-insured patient by her employer;" "printed the document and provided the original physical copy to . . . OIG" in support of her complaints; and "retained no copy of the document" for her own use. *Id.* at 3–4 (2d Am. Comp. ¶¶ 12–14). Plaintiff further alleges that, after she made the disclosures and removed the "document from her employer's control," she was "subjected to retaliatory actions." *Id.* at 4 (2d Am. Compl. ¶ 16). Plaintiff claims that she subsequently "mailed physical copies and a hard drive containing" further "evidence of patient identity theft and related misconduct to . . . OIG." *Id.* at 5 (2d Am. Compl. ¶ 22).

After some initial back-and-forth with OIG staff, Plaintiff provided "OIG with a copy of a charge of discrimination [she had] filed with the Equal Employment Opportunity Commission"

("EEOC"), alleging that her employer discriminated against her "based on perceived disability." *Id.* at 6 (2d Am. Compl. ¶ 28). That same day, "OIG issued a dismissal letter closing Plaintiff's whistleblower retaliation complaints solely on the ground that the matter had been 'filed in another forum.'" *Id.* (2d Am. Compl. ¶ 29). In response, "Plaintiff sent multiple emails to . . . OIG" asserting that her EEOC charge concerned disability discrimination and not her whistleblower complaints and "requesting correction of the closure" of the whistleblower investigation. *Id.* (2d Am. Compl. ¶ 32). "OIG did not respond." *Id.*

Several months later, "Plaintiff submitted an additional whistleblower retaliation complaint" to OIG, arguing "that the [prior] closure rested on an erroneous assumption regarding duplication with her EEOC charge." *Id.* (2d Am. Compl. ¶ 33). "OIG closed" Plaintiff's new complaint on the ground that the alleged misconduct had already been reported to the proper agency. *Id.* at 7 (2d Am. Compl. ¶ 35). Plaintiff has not heard from OIG since then, and the office "retains exclusive possession and control" over "Plaintiff's filings, submissions, and original physical evidence, including the August 23, 2023, patient document." *Id.* (2d Am. Compl. ¶¶ 36–37).

Separately, Plaintiff has brought suit against her former employer in the U.S. District Court for the District of Massachusetts, and, according to Plaintiff, intends to seek leave to amend her complaint in that "action to assert a retaliation claim under" the NDAA. *Id.* (2d Am. Compl. ¶¶ 38–39). She maintains, however, that she needs the "filings, submissions, and original evidence" that she submitted to OIG in order to pursue that claim and that that she cannot obtain that material "elsewhere in complete form or with reasonable certainty." *Id.* at 7–8 (2d Am. Compl. ¶ 40).

### C. Procedural Background

This is not the Court's first decision in this matter. Plaintiff initiated this action in April 2024, Dkt. 1, and OIG moved to dismiss, Dkt. 11. On the same day that the parties finished briefing that motion, however, Plaintiff moved to file her First Amended Complaint, Dkt. 15. The Court granted Plaintiff's motion on the ground that she was entitled to amend as of right and, then, denied as moot OIG's motion to dismiss Plaintiff's original complaint. Min. Order (Aug. 30, 2024). OIG, in turn, filed a motion to dismiss Plaintiff's First Amended Complaint on one—and only one—ground: that OIG's decision to close its investigation of Plaintiff's whistleblower complaints was committed to agency discretion and was thus beyond the Court's authority to review. Dkt. 18-1 at 5-6.

The Court disagreed. *Yaghoobi v. U.S. Dep't of Health & Human Services, Office of the Inspector General*, No. 24-cv-1255, 2025 WL 2192999, at *1 (D.D.C. Aug. 1, 2025). As the Court explained, the premise of OIG's motion to dismiss—that the decision whether to conduct an investigation in response to a whistleblower complaint was committed to agency discretion—was at odds with "the plain text of the NDAA, which provides that the Inspector General 'shall' investigate a whistleblower complaint and 'shall' submit a report of her findings to the complainant, the contractor, and the head of the relevant agency." *Id.* at *5. The Court, accordingly, denied OIG's motion to dismiss. The Court cautioned, however, that its decision was a limited one and that the parties had yet to address several potentially dispositive threshold issues, including "whether Plaintiff has Article III standing." *Id.* at *6.

Several months after the Court issued that decision, Plaintiff filed her Second Amended Complaint. Dkt. 26. This complaint differs from her earlier complaints. Plaintiff no longer seeks an order directing OIG to reopen the investigation regarding her whistleblower complaints

and to submit a report to Plaintiff, her former employer, and the agency head, *cf.* Dkt. 15-1 at 6 (Am. Compl. Prayer), and now seeks only a declaration that the earlier closure of the investigation was unlawful and an order "directing . . . OIG to provide Plaintiff with a complete copy of all filings, submissions, and original evidence" that she "submitted to . . . OIG, including both physical and electronic materials maintained in [OIG's] custody," Dkt. 26 at 9–10 (2d Am. Compl. Prayer). Plaintiff premises her claim for declaratory relief on the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, and her claim for return of the materials she submitted to OIG on the Mandamus Act, 28 U.S.C. § 1361. *Id.*

OIG moves to dismiss for lack of subject-matter jurisdiction and for failure to state a claim and, in the alternative, moves for summary judgment. Dkt. 28. It argues that (1) Plaintiff lacks Article III standing to pursue her APA claim; (2) if the Court disagrees, her APA claim nonetheless fails because the OIG determination not to investigate is not a reviewable final agency action and because the NDAA provides Plaintiff with an alternative remedy in the form of a de novo reprisal action against her employer; and (3) in any event, OIG's decision was not arbitrary and capricious. Dkt. 28-2 at 10–21. And it argues that Plaintiff's Mandamus Act claim fails for lack of jurisdiction because Plaintiff cites no law that imposes a "clear[,] nondiscretionary, and ministerial duty" on OIG "to provide her with access to and copies of her submissions to OIG." *Id.* at 14–15 (internal citation omitted). To the contrary, on OIG's telling, OIG was precluded from providing "Plaintiff with the box of records she seeks because" the material "contain[s] medical records of third parties (Tufts patients) and associated personally identifiable information." *Id.* at 15 n.2.

## II. LEGAL STANDARD

Three legal standards govern the Court's consideration of the pending motions.

*First*, OIG moves to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. A Rule 12(b)(1) motion "may raise a 'facial' challenge to the Court's jurisdiction." *Hale v. United States*, No. 13-cv-1390, 2015 WL 7760161, at *3 (D.D.C. Dec. 2, 2015). A facial challenge asks whether the complaint alleges facts sufficient to establish the court's jurisdiction. *Olenga v. Gacki*, 507 F. Supp. 3d 260, 271 (D.D.C. 2020); *see Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000). To survive a facial challenge under Rule 12(b)(1), the plaintiff must allege facts sufficient to sustain the Court's jurisdiction to resolve the controversy. Where Plaintiff brings suit against the United States or a federal agency, this includes alleging facts sufficient to invoke a relevant waiver of sovereign immunity.

Alternatively, "a Rule 12(b)(1) motion may pose a 'factual' challenge to the Court's jurisdiction." *Hale*, 2015 WL 7760161, at *3. When a motion to dismiss is framed in this manner, the Court "may not deny the motion . . . merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant" but "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting Inc.*, 216 F.3d at 40. The Court "has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction," so long as it "afford[s] the nonmoving party an ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Prakash v. Am. Univ.*, 727 F.2d 1174, 1179–80 (D.C. Cir. 1984) (internal quotation marks and citations omitted).

*Second*, OIG moves to dismiss under Rules 12(b)(6). A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In evaluating such a motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead

to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (alterations in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)). The complaint need not include "detailed factual allegations," and a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," so long as the facts alleged in the complaint are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal quotation marks and citation omitted).

*Third*, OIG moves for summary judgment. Summary judgment is appropriately granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895–96 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the outcome of the litigation. *Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987). In doing so, the movant may not rely on unverified allegations alone or mere assertions contained in the party's briefs. Rather, the movant bears the burden of "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" sufficient show that he or she is entitled to prevail as a matter of undisputed fact. Fed. R. Civ. P. 56(c)(1).

## III. ANALYSIS

The Court begins and ends with subject-matter jurisdiction, although the path to this result differs for Plaintiff's two claims. The Court starts with her APA claim and then turns to Mandamus Act claim.

### A. Plaintiff's APA Claim

Plaintiff has failed to allege facts—or otherwise to show—that she has Article III standing to pursue her APA claim, which "does not seek to compel . . . OIG to reopen or reinvestigate her whistleblower retaliation complaints" and, instead, merely asks the Court to declare that OIG erred in closing the investigation on the grounds that Plaintiff had raised the same complain in another forum. Dkt. 26 at 1–2 (2d Am. Compl. ¶¶ 2–3); *see also id*. at 9–10.

"The 'irreducible constitutional minimum of standing contains three elements': '(1) injury-in-fact, (2) causation, and (3) redressability.'" *Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 48 (D.C. Cir. 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). First, under the injury-in-fact element, the injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted). *Second*, under the causation element, the injury must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result of the independent action of some third party." *Id.* at 560–61 (alterations in original) (citation omitted). Courts must therefore determine "whether it is substantially probable that the challenged acts of the defendant . . . will cause the particularized injury of the plaintiff." *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (citations omitted). Finally, under the redressability element, it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" of the court. *Lujan*, 504 U.S. at 561 (internal quotation marks and citation omitted). A

plaintiff bears the burden of demonstrating its standing at every stage of the litigation, but that burden evolves with the progressively demanding standards at the motion to dismiss and summary judgment stages. *See id.*; *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In determining whether a plaintiff has standing, the court must focus on the specific form of relief sought. *See*, *e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

Although Plaintiff's theory of standing to pursue her APA claim is far from clear, she gestures at two possible theories.

*First*, in her opposition to OIG's motion to dismiss, Plaintiff asserts that the "declaratory relief" that she seeks "would remedy the process injury and prevent [OIG] from treating a procedural closure as if it were an adjudication of" her NDAA reprisal claim. Dkt. 31 at 5. To start, even assuming that Plaintiff possessed a procedural right to have OIG consider her complaints on the merits, an alleged deprivation of that right would not, standing alone, satisfy Article III. To the contrary, "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).

Moreover, to the extent Plaintiff is concerned that OIG might "treat[]" the closing of the investigations regarding her complaints "as if it were an adjudication of" her NDAA "reprisal claims," Dkt. 31 at 5, that concern is without foundation. OIG has made clear that it did not adjudicate her complaints on the merits but, rather, closed the investigation merely because she was, at least in OIG's view, pursuing her complaints before the EEOC. Dkt. 28-2 at 11 (citing Dkt. 26 at 6 (2d Am. Compl. ¶ 29)). Plaintiff fails to identify any plausible basis to believe that OIG will, at some future date, treat the closures as on the merits.

Relatedly, OIG infers from Plaintiff's Second Amended Complaint that she might be "concerned that OIG's decision not to investigate her allegations . . . might impair her ability to pursue a retaliation claim against her former employer." Dkt. 28-2 at 11. That inference is reasonably founded. Plaintiff alleges that she "has a pending against her former employer in the District of Massachusetts" and that she "intends to amend [that] action to assert a retaliation claim under" the NDAA. Dkt. 26 at 7 (2d Am. Compl. ¶¶ 38–39). To be sure, Plaintiff goes on to allege that she needs her "filings, submissions, and original evidence in . . . OIG's possession" to pursue that case, *id.* at 7-8 (2d Am. Compl. ¶ 40), at least suggesting that her concern is not a possible failure-to-exhaust or preclusion defense. And, even more to the point, Plaintiff fails to invoke this theory in her opposing OIG's motion to dismiss her APA claim for lack of standing. *See* Dkt. 31 at 4–5.

But even giving Plaintiff the benefit of the doubt, and assuming that she seeks declaratory relief to guard against such a possible defense in the Massachusetts litigation, the Court remains unconvinced that she has met her burden of alleging (or proffering) facts sufficient to establish Article III standing for two reasons. First, it is too speculative to postulate that she might be granted leave to amend her complaint in the Massachusetts litigation to assert an NDAA retaliation claim, that her employer would raise a failure-to-exhaust defense, and that the U.S. District Court for the District of Massachusetts would dismiss her claim for failure to exhaust or for any similar reason. Second, as OIG explains, nothing contained in the NDAA suggests that such a defense is plausible. Dkt. 28-2 at 13–14. To the contrary, the statute provides that "the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint, and the complainant may bring a de novo action at law or equity against the contractor, subcontractor, grantee, [or] subgrantee . . . to seek compensatory damages and other

relief . . . in the appropriate district court of the United States," if one of two conditions are satisfied: either (1) "the head of an executive agency issues an order denying relief" or (2) the agency head "has not issued an order within 210 days after the submission of a complaint." 41 U.S.C. § 4712(c)(2). Here, Plaintiff offers no response to OIG's observation, Dkt. 28-2 at 13–14, that the second of these conditions was satisfied years ago.

*Second*, in her amended opposition brief, Plaintiff shifts gears and argues that she has Article III standing because "OIG wrongfully deprived her of the very process Congress created for whistleblowers like her," and, had OIG conducted a full and complete investigation, it might have revealed facts not otherwise known to Plaintiff that could have paved the way for her to obtain "reinstatement, back pay, benefits, costs, and other relief through the agency-head process," and, possibly, through "*de novo* litigation" against her former employer. Dkt. 37 at 6–7. The most significant problem with this theory is that it contradicts Plaintiff's Second Amended Complaint and her initial opposition to OIG's motion to dismiss, both of which emphatically deny that Plaintiff is seeking "to compel . . . OIG to reopen or reinvestigate her whistleblower complaints." *See* Dkt. 26 at 1 (2d Am. Compl. ¶ 2); *see also id.* at 8 (2d Am. Compl. ¶ 45); *id.* at 9–10 (2d Am. Compl. Prayer); Dkt. 31 at 5 (APA injury can be redressed by "correcting the improper 'another forum' closure rational and clarifying the nature of the closure"). Although *pro se* plaintiffs are entitled to some latitude, and the Court is required to consider "'supplemental material filed by a pro se litigant in order to clarify the precise claims being urged'—including facts set forth in a plaintiff's opposition to a motion to dismiss," *Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 538 (D.C. Cir. 2024) (quoting *Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007)); *see also Naz v. Wright*, 177 F.4th 1242, 1246 (D.C. Cir. 2026), that leniency does not permit a *pro se* plaintiff to seek a new form relief—and,

in particular, a form of relief expressly excluded in the plaintiff's complaint—in an "amended opposition" brief filed after the completion of briefing in the case.

The Court, accordingly, concludes that Plaintiff lacks Article III standing to pursue the only relief that she has sought in her APA claim—a declaration that OIG erred in closing the investigation relating to her NDAA complaints on the ground that she had filed a complaint in another forum.

**B. Mandamus Act Claim**

Plaintiff's Mandamus Act claim also fails for lack of Article III jurisdiction, but for a different reason.

The Mandamus Act, 28 U.S.C. § 1361, vests federal district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Mandamus relief is a "drastic" remedy, only to be invoked in "extraordinary circumstances." *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002) (quoting *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). To show entitlement to mandamus relief, a plaintiff must demonstrate (1) that he has a clear and indisputable right to relief, (2) that the government agency or official is violating a clear, nondiscretionary duty to act, and (3) that no adequate alternative remedy exists. *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016); *see Heckler v. Ringer*, 466 U.S. 602, 616–17 (1984). "These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction." *Am. Hosp. Ass'n*, 812 F.3d at 189.

Here, Plaintiff has alleged facts sufficient to establish Article III standing to pursue her claim for the return of the materials she submitted to OIG. She alleges that she needs the materials to litigate her claims against her former employer in the U.S. District Court in

Massachusetts; that her lack of access to these materials was caused by OIG's decision not to return them to her; and that a decision from this Court ordering OIG to return the materials would redress her asserted injury. At least at this early stage of the litigation, that is enough to allege Article III jurisdiction.

But Plaintiff has failed to sufficiently alleged facts that might plausibly establish statutory jurisdiction. Far from identifying a statute that provides her with a clear and indisputable right to relief, or that imposes a nondiscretionary, ministerial duty on OIG, Plaintiff fails to cite to any statute, regulation, rule, or undertaking that requires OIG to return materials submitted to it by a complainant. Moreover, even if the Court were to construe Plaintiff's claim as an APA claim to "compel agency action unlawfully withheld," 5 U.S.C. § 706(1), the same result would hold. As the Supreme Court has explained, "the only agency action that can be compelled under the APA is action legally *required*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) (emphasis in original). Like a claim for mandamus relief, then, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Id.* at 64 (emphasis in original). One difference between a Mandamus Act claim and an APA claim is that a plaintiff's failure to identify a clear nondiscretionary duty poses a jurisdictional hurdle for mandamus relief, *see Lovitky v. Trump*, 949 F.3d 753, 759 (D.C. Cir. 2020), but goes to the merits of an APA claim, *see L'Association des Americains Accidentels v. United States Dep't of State*, 633 F. Supp. 3d 74, 80 (D.D.C. 2022). Because Plaintiff asserts only a Mandamus Act claim for return of the records, the Court will treat the issue as jurisdictional.

The Court, accordingly, concludes that it lacks statutory jurisdiction to consider Plaintiff's Mandamus Act claim.

## CONCLUSION

For the foregoing reasons, the Court will grant OIG's motion to dismiss for lack of jurisdiction, Dkt. 28.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: November 10, 2026